GORDON SILVER
GERALD M. GORDON, ESQ., Nevada Bar No. 229
E-mail: ggordon@gordonsilver.com
THOMAS H. FELL, ESQ., Nevada Bar No. 3717
E-mail: tfell@gordonsilver.com
3960 Howard Hughes Pkwy., 9th Floor
Las Vegas, Nevada 89169
Telephone (702) 796-5555
Facsimile (702) 369-2666
Proposed Attorneys for Debtors

E-Filed 4/2/09

## UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF NEVADA

In re:

ZANTE, INC.

☐ Affects this Debtor.

☒ Affects all Debtors.
☐ Affects THE SANDS REGENT
☐ Affects PLANTATION INVESTMENTS, INC.
☐ Affects LAST CHANCE, INC.
☐ Affects DAYTON GAMING, INC.
☐ Affects CALIFORNIA PROSPECTORS, LTD.
☐ Affects HERBST GAMING, INC.
☐ Affects FLAMINGO PARADISE GAMING, LLC
☐ Affects E-T-T, INC.
☐ Affects MARKET GAMING, INC.
☐ Affects THE PRIMADONNA COMPANY, LLC
☐ Affects HGI LAKESIDE, INC.
☐ Affects HGI ST. JO, INC.
☐ Affects HGI MARK TWAIN, INC.
☐ Affects CARDIVAN COMPANY
☐ Affects CORRAL COIN, INC.
☐ Affects CORRAL COUNTRY COIN, INC.
☐ Affects E-T-T ENTERPRISES, LLC

**Case No.: BK-N-09-50746-GWZ; Chapter 11**
**Jointly Administered with:**

| | |
|---|---|
| 09-50747 | The Sands Regent |
| 09-50748 | Plantation Investments, Inc. |
| 09-50749 | Last Chance, Inc. |
| 09-50751 | Dayton Gaming, Inc. |
| 09-50750 | California Prospectors, Ltd. |
| 09-50752 | Herbst Gaming, Inc. |
| 09-50753 | Flamingo Paradise Gaming, LLC |
| 09-50754 | E-T-T, Inc. |
| 09-50755 | Market Gaming, Inc. |
| 09-50756 | The Primadonna Company, LLC |
| 09-50757 | HGI Lakeside, Inc. |
| 09-50758 | HGI St. Jo, Inc. |
| 09-50759 | HGI Mark Twain, Inc. |
| 09-50760 | Cardivan Company |
| 09-50761 | Corral Coin, Inc. |
| 09-50762 | Corral Country Coin, Inc. |
| 09-50763 | E-T-T Enterprises, LLC |

Date:   April 30, 2009
Time:   10:00 a.m.

## DECLARATION OF JEFFREY R. TRUITT IN SUPPORT OF
## APPLICATION OF DEBTORS FOR ORDER, UNDER 11 U.S.C. §§ 327(a), 328(c)
## 1107(b) AND FED. R. BANKR. P. 2014, AUTHORIZING RETENTION OF
## XROADS SOLUTIONS GROUP, LLC AS FINANCIAL AND RESTRUCTURING
## ADVISOR

JEFFREY R. TRUITT, being duly sworn, says:

1.      I am a Principal of XRoads and am duly authorized to make this declaration ("Declaration") on behalf of XRoads Solutions Group, LLC ("XRoads"). I submit this Declaration  and the related exhibits in support of the application (the "Application") of the Debtors for an order pursuant to §§ 327(a), 328(c) and 1107(b) of the United States Bankruptcy Code, 11 U.S.C. §§ 101-1330, as amended (the "Bankruptcy Code"), Rules 2014(a) and 2016 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") and Rule 2016 of the Local Bankruptcy Rules for the District of Nevada (the "Local Bankruptcy Rules") authorizing the retention and employment of XRoads as financial and restructuring advisor to the Debtors.

2.      XRoads is a national consulting firm that specializes in, among other things, corporate restructurings, operations improvement, mergers and acquisitions, valuation analysis and case management services in Chapter 11 cases.  XRoads has advised numerous debtors, unsecured creditor committees and other parties in bankruptcy proceedings over the past 10 years.  XRoads has the experience and gaming industry expertise to assist the Debtors' with the issues presented in these cases.

2.      Unless otherwise stated in this Declaration, I have personal knowledge of the facts set forth herein.[1]  Capitalized terms and phrases not otherwise defined herein shall have the meanings ascribed to such terms in the Application.

---

[1]      Certain of the disclosures set forth herein relate to information obtained from XRoads' computer data base and matters within the knowledge of other professionals at XRoads and are based on information provided by them.

## QUALIFICATIONS OF PROFESSIONALS

3.     XRoads possesses extensive knowledge and expertise in the areas of bankruptcy and financial matters relevant to these cases and XRoads is well qualified to advise the Debtor on such bankruptcy and financial matters. In selecting its financial and restructuring advisor, the Debtors sought an advisor with experience in representing debtors' in complex cases and experience with the gaming industry. XRoads has such experience, having worked for a number of debtors in significant reorganizations under Chapter 11 of the Bankruptcy Code. Furthermore, the senior XRoads professionals advising the Debtors in these cases have previously served as financial and restructuring advisor in several matters involving gaming companies operating in one or more jurisdictions within the United States.

## SERVICES TO BE PROVIDED BY XROADS

4.     XRoads will provide financial and restructuring advisory services ("Restructuring Services") to the Debtors that may include, but are not limited to:

     i. Working with management to refine and update the Company's financial projections from time to time and analyzing its cash flow generating capacity under various operating / strategic scenarios;

    ii. Assisting management with refining / modifying the business plans for the Company's operating units;

   iii. Facilitating due diligence when and if performed by potential third-party investors, the Company's bank group and the Company's bondholders and interfacing with the principals and advisors for such parties;

   iv. Participating in discussions / negotiations with the Company's creditor constituencies and other relevant parties-in-interest and assisting with the development and preparation of presentations in connection therewith;

    v. Updating, extending and/or refining (as necessary) 13-week cash flow models and tracking the Company's performance relative to same;

vi.    Advising and assisting the Company with respect to various aspects of its restructuring efforts and performing financial analyses in connection with same;

vii.   Interfacing with HGI management and coordinating activities among the Company's professionals and advisors;

viii.  Assisting the Company in planning for, and performing various functions related to, the commencement of one or more cases under the Bankruptcy Code;

ix.    Advising and assisting with respect to negotiations concerning the use of cash collateral and, if necessary, identifying potential lenders to provide debtor-in-possession ("DIP") financing to the Company and assisting management with negotiating the terms thereof;

x.     Assistance with implementation of financial reporting procedures consistent with the applicable Local Bankruptcy Rules and compliance with applicable financial reporting guidelines issued;

xi.    Assisting with the formulation and preparation of a plan of reorganization, a disclosure statement in support thereof and the various exhibits and analyses related to such disclosure statement;

xii.   Assisting with the confirmation of a plan of reorganization (which services may require the testimony of one or more XRoads' professionals);

xiii.  Assisting with the implementation and substantial consummation of a plan of reorganization; and

xiv.   Providing such other Restructuring Services as the Company and XRoads shall mutually agree.

6.    Subject to this Court's approval of the Application, XRoads is willing to serve as the Debtors' financial and restructuring advisor and to perform the services described above. XRoads will use reasonable efforts to coordinate with the Debtors' other retained professionals to avoid unnecessary duplication of services.

## PROFESSIONAL COMPENSATION

7.    As of the date of this Declaration, XRoads has received no compensation for its post-petition work on behalf of the Debtors. XRoads has been fully paid by the Debtors for all pre-petition services rendered by XRoads to the Debtors.

- 4 -

8.    XRoads' fees for the Restructuring Services described above (the "Restructuring Fees") are based upon the hours worked by XRoads personnel multiplied by the applicable hourly billing rates of such personnel. XRoads' currently hourly billing rates for Restructuring Services are as follows:

| | |
|---|---|
| Managing Principal | $650 per hour |
| Principal(s) | $550 to $625 per hour |
| Managing Director(s) | $475 to $525 per hour |
| Director(s) | $395 to $450 per hour |
| Senior Consultant(s) | $295 to $390 per hour |
| Consultant(s) | $240 to $290 per hour |
| Associate(s) and Paraprofessional(s) | $90 to $190 per hour |

9.    The hourly rates referenced herein (and in the attached engagement letter) are XRoads' normal and customary hourly rates for financial and restructuring advisory services in cases such as these.

10.    XRoads' rates are adjusted in January and July of each year to reflect the advancing experience, capabilities, and seniority of our professionals as well as general economic factors. Accordingly, the rates listed above may be changed during the course of the engagement, but shall not increase by more than five percent (5%) on each review period.

11.    XRoads will also seek reimbursement for necessary expenses incurred, which shall include travel, photocopying, delivery service, postage, telephone, vendor charges and other out-of-pocket expenses incurred in providing professional services.

12.    XRoads intends to apply to the Court for the allowance of compensation for professional services rendered and reimbursement of expenses incurred in accordance with the applicable provisions of the Bankruptcy Code, the Bankruptcy Rules and the Local Bankruptcy Rules.  XRoads has agreed to accept as compensation such sums as may by allowed by the Court.  XRoads understands that interim and final fee awards are subject to approval of the Court.

13.    Other than as set forth herein or in XRoads engagement letter attached herewith as Exhibit 1, there is no proposed arrangement between the Debtors and XRoads for compensation to be paid in these cases.  Except as permitted under section 504(b) of the Bankruptcy Code and payments by XRoads to its employees, consultants and independent contractors, XRoads has no agreement with any other entity to share any compensation received, nor will any be made.

## DISINTERESTEDNESS OF XROADS' PROFESSIONALS

14.    Based upon available information, XRoads searched its records to identify any connection or relationship with the following entities:

   a.    The Debtors and their affiliates;

   b.    The equity shareholders of the Debtors;

   c.    The Debtors' major secured lenders;

   d.    The Debtors' significant unsecured creditors;

   e.    Counsel to the Debtors and certain other parties-in-interest; and

   f.    The directors/managers and executive officers of Herbst Gaming, Inc.

- 6 -

15.     Based upon the database search described above, and in accordance with section 328(c) and 1107(b) of the Bankruptcy Code, XRoads represents no other entity having an adverse interest in connection with these cases, and does not represent or hold an interest adverse to the interest of the estates with respect to the matters with which XRoads will be employed.

16.     XRoads is a "disinterested person" as that term is defined in section 101(14) of the Bankruptcy Code (and as further qualified by section 1107(b)) given that, to the best of my information and belief, XRoads:

a.  is not a creditor, equity security holder, or insider of the Debtors or creditors in this case;

b.  is not and was not, within two years before the commencement of these Chapter 11 cases a director, officer or employee of the Debtors; and

c.  does not have an interest materially adverse to the interests of the estates or any class of creditors or equity security holders, by reason of any direct or indirect relationship to, connection with, or interest in, the Debtors or for any other reason.

17.     Neither XRoads, nor any employee of XRoads has an interest materially adverse to the interests of the Debtors, their estates or of any class of creditors or equity security holders, by reason of any direct or indirect relationship to, connection with, or interest in, the Debtors, or for any other reason.

18.     To the best of my knowledge, except as disclosed herein in accordance with Bankruptcy Rules 2014 and 5002, XRoads has no connections with the Debtors, any insiders of the Debtors, creditors, or any other party-in-interest, their respective attorneys and accountants (to the extent known), the United States Trustee for

the District of Nevada or any person employed in the office thereof, or any United States Bankruptcy Judge of the District of Nevada.

19.    XRoads has in the past been retained by, and presently and likely in the future will provide services for, certain creditors of the Debtors and other parties-in-interest in matters unrelated to such parties' claims against or interests in the Debtors or to these Chapter 11 cases.

20.    XRoads makes the following disclosures of parties with an interest in or involved in this case:

- American International Group, Inc. ("AIG") was previously a member of a note holder group of an unrelated entity to which XRoads was the Responsible Officer. AIG was also previously an adverse and a non-adverse party to XRoads' clients in unrelated matters.
- Bally Gaming is a non-adverse party to a XRoads' client in an unrelated matter.
- Bank of America ("BofA") is currently an adverse party to a XRoads client in an unrelated matter. BofA has previously retained XRoads in unrelated matters. BofA has also previously been an adverse and a non-adverse party to XRoads' clients in unrelated matters.
- Berry-Hinckley Industries is currently a XRoads client on unrelated matters.
- CIT Group ("CIT") is currently an adverse party to a XRoads client in an unrelated matter. CIT has previously been a non-adverse and an adverse party to XRoads' clients in unrelated matters. Also, CIT Retail Finance Group was previously a XRoads' client on an unrelated matter.
- Comerica was formerly XRoads' principal banker and lender. Comerica has previously been an adverse party and a non-adverse party to XRoads' clients in other unrelated matters. Comerica was previously part of a bank group that XRoads' advised in an unrelated matter.
- Deutsche Bank ("Deutsche") is currently an adverse party to a XRoads client in an unrelated matter. Deutsche has previously retained XRoads in an unrelated matter. Also, Deutsche previously was an adverse and non-adverse party to XRoads' clients in unrelated matters.
- GE Capital Corporation ("GECC") is currently an adverse party to a XRoads client in an unrelated matter and was previously a XRoads' client in an unrelated matter and a non-adverse party to XRoads' clients in other

unrelated matters. GECC was previously a non-adverse and an adverse party to XRoads' clients in other unrelated matters.

- Gibson Dunn & Crutcher LLP ("GD&C") previously hired XRoads to provide litigation support for a GD&C client in an unrelated matter. GD&C has previously represented XRoads in an unrelated matter.

- Goldman Sachs & Co. ("Goldman Sachs") is currently an adverse party to a XRoads client in an unrelated matter. Goldman Sachs was previously a non-adverse and an adverse party to XRoads' clients in other unrelated matters.

- Gordon & Silver, LTD previously represented non-adverse parties to XRoads' clients in unrelated matters and currently serves common clients with XRoads in unrelated matters. Gordon & Silver, Ltd. has also previously served as counsel to an employee of XRoads in connection with a civil litigation matter unrelated to XRoads.

- Houlihan Lokey Howard & Zukin ("Houlihan Lokey") is currently an adverse party to a XRoads' client in an unrelated matter and has previously been an adverse and a non-adverse party to XRoads' clients unrelated matters.

- International Game Technologies (IGT) is currently a non-adverse party to a XRoads client in unrelated matters. In addition, a representative of IGT serves as the chairperson of an Official Committee of Unsecured Creditors for whom XRoads serves as financial advisor. Lastly, IGT is an adverse party of a XRoads client in an unrelated matter.

- Latham and Watkins ("Latham") previously represented XRoads in an unrelated matter. In addition, Latham has previously represented XRoads' clients in unrelated engagements, has previously represented parties adverse to XRoads' clients in other unrelated matters, and was previously a client of XRoads' in an unrelated matter.

- Lehman Brothers Inc. ("Lehman") is currently an adverse party to a XRoads' client in an unrelated matter and has previously been an adverse and a non-adverse party to XRoads' clients in unrelated matters. Lehman has acted as an investment banker to a XRoads' client in an unrelated XRoads' engagement.

- Merrill Lynch & Co., Inc. is currently an adverse and a non-adverse party to XRoads' clients and was previously an adverse and a non-adverse party to XRoads' clients in other unrelated matters.

- Nomura Securities is currently an adverse party to a XRoads client in an unrelated matter.

- The Blackstone Group currently is a non-adverse party to a XRoads client in an unrelated matter and previously represented adverse parties to XRoads' clients in other unrelated matters.

- Wachovia Bank, successor by merger to First Union National Bank ("First Union") is currently an adverse party to XRoads' clients in unrelated matters and has previously been a non-adverse and an adverse party to XRoads' clients in other unrelated matters. First Union was previously a client of XRoads, as a member of a bank group, in an unrelated matter.

- Wells Fargo is currently an adverse and a non-adverse party to XRoads' clients in unrelated matters and was previously an adverse and a non-adverse party to XRoads' clients in other unrelated matters. In addition, Wells Fargo has been both an agent bank and a member of bank groups that XRoads advised in previous unrelated matters.

- Wilmington Trust Company ("WTC") is currently an adverse party to a XRoads client in an unrelated matter. XRoads has previously worked on an engagement where WTC was part of the bondholders committee that XRoads advised in an unrelated matter.

- WMS Gaming is currently a non-adverse party to a XRoads client in an unrelated matter.

21.    XRoads has not provided, and will not provide, professional services to any of the creditors, other parties-in-interest or their attorneys with regard to any matter directed related to these Chapter 11 cases.

22.    XRoads has provided pre-petition financial and restructuring services to the Debtors. In addition, during the days leading up to the commencement of these cases, XRoads Case Management Services, LLC ("XRoads CMS"), an affiliate of XRoads, assisted the Debtors with certain bankruptcy preparation and compliance tasks. During the one-year period prior to the commencement of these Chapter 11 cases, XRoads and XRoads CMS collectively received payments (including any portion of the retainer (as described below) that was applied in respect of pre-petition services) from the Debtors totaling approximately $2,148,352.16 for services rendered and expenses incurred. XRoads and XRoads CMS are not creditors of the Debtors' estates.

23.    XRoads has received retainers from the Debtors totaling $250,000. Of such amount, $81,785.04 has been applied to fees and expenses incurred by XRoads

and XRoads CMS during the days immediately preceding the commencement of these cases. Any amounts from the retainer in excess of fees and expenses incurred before the entry for an Order for Relief (i.e. $168,214.96) will be held by XRoads as a retainer against post-petition fees and expenses that are allowed by the Court.

24.    This declaration is provided in accordance with sections 101(14), and 327 of the Bankruptcy Code and Bankruptcy Rule 2014.

25.    I have read the Application, and, to the best of my knowledge, information and belief, the contents of said Application are true and correct.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct to the best of my knowledge, information and belief.

Further, deponent says not.

XROADS SOLUTIONS GROUP, LLC

Jeffrey R.Truitt

Dated: April 2ⁿᵈ, 2009

- 11 -

**EXHIBIT 1**

**XRoads Solutions Group, LLC.**

**Engagement Letter**



1821 East Dyer Road, Suite 225
Santa Ana, CA 92705

main 949.567.1600
fax   949.567.1655
www.xroadsllc.com

CONFIDENTIAL

March 1, 2009

Ms. Mary Beth Higgins
Chief Financial Officer
Herbst Gaming, Inc.
3440 W Russell Rd
Las Vegas, NV 89118-2495

RE:    Herbst Gaming, Inc. / XRoads Solutions Group, LLC et al.

Dear Ms. Higgins:

This letter agreement will amend, restate and supersede that certain letter agreement dated
September 19, 2007 ("Amended Agreement") between XRoads Solutions Group,
LLC ("XRoads") and Herbst Gaming, Inc. and its subsidiaries and affiliates (collectively, the
"Company") and the terms and conditions under which such services will be performed (the
"Engagement"). All references in this Amended Agreement to XRoads shall include XRoads'
officers, employees and agents. If appropriate in connection with performing its services for the
Company hereunder, XRoads may utilize the services of one or more of its affiliates, in which
case the references herein to XRoads shall include such affiliates.

1.    **Scope of Services**.

      a.    XRoads is being engaged to serve as the Company's restructuring
advisor in connection with the Company's efforts to restructure its outstanding
indebtedness and turnaround its financial performance. XRoads' client in this matter
shall be the Company. XRoads' Principal, Jeffrey Truitt shall have the primary
oversight responsibility for the Engagement.

      b.    XRoads will provide various Restructuring Services which may include,
but not necessarily be limited to, the following ("Restructuring Services"):

            i.    Working with management to refine and update the Company's
financial projections from time to time and analyzing its cash flow
generating capacity under various operating / strategic scenarios;

            ii.    Assisting management with refining / modifying the business plans
for the Company's operating units;

            iii.   Facilitating due diligence when and if performed by potential third-
party investors, the Company's bank group and the Company's



Initial
Here



Herbst Gaming, Inc.
March 1, 2009
Page 2 of 14

bondholders and interfacing with the principals and advisors for such parties;

iv. Participating in discussions / negotiations with the Company's various creditor constituencies and other relevant parties-in-interest and assisting with the development and preparation of presentations in connection therewith;

v. Updating, extending and/or refining (as necessary) 13-week cash flow models and tracking the Company's performance relative to same;

vi. Advising and assisting the Company with respect to various aspects of its restructuring efforts and performing financial analyses in connection with same;

vii. Interfacing with HGI management and coordinating activities among the Company's professionals and advisors;

viii. Assisting the Company in planning for, and performing various functions related to, the commencement of one or more cases under chapter 11, title 11 of the United States Code (as amended, the "Bankruptcy Code");

ix. Advising and assisting with respect to negotiations concerning the use of cash collateral and, if necessary, identifying potential lenders to provide debtor-in-possession ("DIP") financing to the Company and assisting management with negotiating the terms thereof;

x. Assistance with implementation of financial reporting procedures consistent with the applicable Local Bankruptcy Rules and compliance with applicable financial reporting guidelines issued;

xi. Assisting with the formulation and preparation of a plan of reorganization, a disclosure statement in support thereof and the various exhibits and analyses related to such disclosure statement;

xii. Assisting with the confirmation of a plan of reorganization (which services may require the testimony of one or more XRoads' professionals);

xiii. Assisting with the implementation and substantial consummation of a plan of reorganization; and

xiv. Providing such other restructuring services as the Company and XRoads shall mutually agree.



Initial

Here



Herbst Gaming, Inc.
March 1, 2009
Page 3 of 14

    c.    The scope of XRoads' services may be expanded from time to time, provided that XRoads and the Company mutually agree in writing to any such expansion and any corresponding increase in fees.

2.    **Fees**.

    a.    XRoads' fees for the Restructuring Services described in paragraph 1.b. above (hereinafter, the "Restructuring Fees") are based upon the hours worked by XRoads personnel multiplied by the applicable hourly billing rates of such personnel. Our hourly billing rates for Restructuring Services are as follows:

| | |
|---|---|
| Managing Principal | $650 per hour |
| Principal(s) | $550 to $625 per hour |
| Managing Director(s) | $475 to $525 per hour |
| Director(s), | $395 to $450 per hour |
| Senior Consultant(s) | $295 to $390 per hour |
| Consultant(s) | $240 to $290 per hour |
| Associate(s) and Paraprofessional(s) | $90 to $190 per hour |

    b.    The Company shall pay all expenses reasonably incurred by XRoads for services related to the Engagement (e.g., actual out of pocket expenses such as communications, travel, meals and living expenses incurred in connection with the Engagement).

    c.    XRoads will submit invoices for the Restructuring Fees and its out of pocket expenses on a bi-weekly basis, which invoices shall be paid from the Advance (as provided for below), or in accordance with any applicable payment procedures implemented by the bankruptcy court overseeing the Company's bankruptcy case on a post-petition basis.

    d.    Failure of the Company to promptly pay amounts due for services rendered or for reimbursement of expenses shall constitute justification for XRoads to terminate this Amended Agreement upon five days written notice.

    e.    The Company shall pay to XRoads $250,000 (less any amount held as a retainer by XRoads immediately prior to the execution of this Amended Agreement) as an advance (the "Advance") due upon signing this Amended Agreement. We require that this Advance be replenished to the $250,000 level on a bi-weekly basis. We shall inform you bi-weekly or more frequently of the amount(s) necessary to replenish the Retainer and you shall replenish the Retainer within three (3) days of such notifications. Up to the full amount of the Advance will be considered to be "earned" at the time that



Initial
_____ Here



Herbst Gaming, Inc.
March 1, 2009
Page 4 of 14

any fees and expenses are incurred. It is intended that the Advance be applied to amounts due from the Company, and XRoads shall have the right and authority to pay itself any amounts due from the Advance. The Advance is not intended to be an estimate for the total cost of work to be performed by XRoads. The Company hereby grants a security interest in the Advance to XRoads to secure payment of all amounts due hereunder. The Company acknowledges and agrees that this security interest is perfected by virtue of XRoads' possession of the Advance. To the extent that we do not use the entire balance of the Advance (i.e. the Advance exceeds the amount of our final bill), we will refund the unearned Advance balance to the Company. To the extent that our fees and expenses exceed the Retainer amount, we will bill the Company for the excess amount, plus such amount necessary to bring the Advance back to its original $250,000 amount.

     f.     All payments required hereunder shall be paid by wire transfer unless otherwise permitted by XRoads. Set forth below are XRoads' wire transfer instructions:

| | |
|---|---|
| Bank Name: | Bank of America |
| Bank Address: | 2340 West Joppa Road |
| | MD4-647-01-01 |
| | Lutherville, MD 21093 |
| ABA Routing-wire #: | 026009593 |
| ABA Routing –ACH/EFT#: | 052001633 |
| Account Name: | Rockland Credit Finance LLC |
| Account #: | 3932910113 |

Payments made by mail should be sent to ***XRoads Solutions Group, LLC***, c/o Rockland Credit Finance LLC, Department 595, P.O. Box 17553, Baltimore, MD 21203-7553.

     g.     XRoads' rates are adjusted in January and July of each year to reflect the advancing experience, capabilities, and seniority of our professionals as well as general economic factors. Accordingly, the rates listed above may be changed during the course of the Engagement, but shall not increase by more than five percent (5%) on each review period.

     3.     **Term of Engagement**. The term of the Engagement shall commence as of the "Effective Date". The Effective Date shall mean the first date upon which all of the following conditions have been met: (i) this Amended Agreement has been executed by each of the parties; and (ii) the full amount of the Advance has been paid to XRoads. Either the Company or XRoads may terminate this Amended Agreement upon ten (10) days advance written notice, with payment due to XRoads for services rendered and expenses incurred through the termination. XRoads may withdraw for good cause upon five (5) days notice to the Company. Good cause includes the Company's breach of this Amended Agreement (including the Company's failure to pay any appropriate invoice or indemnity obligation when due), the Company's failure or refusal to cooperate with XRoads, or any fact or circumstance that would render XRoads' continuing representation unlawful or unethical. In the event of termination of the Engagement pursuant to this provision (other than a termination by XRoads for good



Initial
_____ Here



Herbst Gaming, Inc.
March 1, 2009
Page 5 of 14

cause), XRoads will use commercially reasonable efforts to transition any work in process to Company personnel and/or a successor restructuring advisor.

4.     **Work Performed**.  XRoads work for the Company will be performed on a "level-of-effort" basis; that is, the depth of our analyses and extent of our authentication of the information on which our advice to the Company will be predicated, may be limited in some respects due to the extent and sufficiency of available information, time constraints dictated by the circumstances of the Engagement, and other factors.  Moreover, we do not contemplate examining any such information in accordance with generally accepted auditing or attestation standards.  Rather, it is understood that, in general, we are to rely on information disclosed or supplied to us by employees and representatives of the Company without audit or other detailed verification of its accuracy and validity.

5.     **Reports**.  XRoads will submit oral and/or written reports, at the request of the Company, summarizing our evaluations and analyses based on our work pursuant to this Amended Agreement.  Our reports will encompass only matters that come to our attention in the course of our work that we perceive to be significant in relation to the objective of our Engagement.  However, because of the time and scope limitations implicit in our Engagement and the related limitations on the depth of our analyses and the extent of our verification of information, we may not discover all such matters or perceive their significance.  Accordingly, we will be unable to and will not provide assurances in our reports concerning the integrity of the information used in our analyses and on which our findings and advice to the Company may be based.  In addition, we have no obligation to and will not update our reports or extend our activities beyond the scope set forth herein unless the Company requests and we agree to do so.

6. **Disclosures**.  XRoads has represented, and will in the future represent, many different clients with various business interests in numerous industries.  These clients are often referred to XRoads by intermediaries such as lawyers, investment bankers, lenders and accountants ("Referral Sources").  In undertaking the Engagement on behalf of the Company, XRoads' objective is to provide services for the Company to the best of its ability, but without precluding XRoads from representation of other clients (including those operating in the gaming industry) or from accepting referrals from or making referrals to Referral Sources.  Since XRoads wants the Company to be comfortable with the retention of XRoads in light of other client and Referral Sources relationships, XRoads makes the disclosures found in Exhibit A attached hereto, based on the information provided by the Company of parties with an interest in the Engagement.

XRoads agrees to update the disclosure information from time to time if and when additional parties with an interest in or a relationship with the Company are identified by the Company, in writing, to XRoads.

7.     **Entire Amended Agreement, Waiver, Modification, and Notices**.  This Amended Agreement, including any Exhibits, constitutes the final and complete expression of the parties with respect to its subject matter and supersedes and replaces any other written or oral agreement or understanding between the parties including but not limited to the letter

_____ Here



Herbst Gaming, Inc.
March 1, 2009
Page 6 of 14

agreement by and among XRoads and the Company dated September 19, 2007. This Amended Agreement may be amended, modified, supplemented or waived only by a written instrument signed by both parties. No waiver of a breach hereof shall be deemed to constitute a waiver of a future breach, whether of a similar or a dissimilar nature. All notices, demands or other communications which are required or are permitted to be given in this Amended Agreement shall be in writing and shall be deemed to have been sufficiently given (i) upon personal delivery, (ii) the third business day following due deposit in the United States mail, postage prepaid, and sent certified mail, return receipt requested, correctly addressed or (iii) when receipt is acknowledged if sent via facsimile transmission. Notices to you shall be sent to the address set forth on page one of this Amended Agreement. Notices to XRoads shall be sent to the addresses set forth below:

|                                 |                                      |
| ------------------------------- | ------------------------------------ |
| XRoads Group, LLC               | XRoads Group, LLC                    |
| Attn: General Counsel           | Attn: Chief Operating Officer        |
| 1821 East Dyer Road, Suite 225  | 400 Madison Ave, 3rd Floor      |
| Santa Ana, California 92705     | New York, NY 10017                   |
| Fax: (949) 567-1702             | Fax: (212) 610-5601                  |

Either party may give written notice of a change of address by certified mail, return receipt requested, and after notice of such change has been received, any notice shall be given to such party in the manner above described at such new address.

8.     **Authority**. The Company has all requisite corporate power and authority to enter into this Amended Agreement. The Company and XRoads have fully reviewed this Amended Agreement, have obtained counsel on its terms, and have participated in the drafting of this Amended Agreement such that it shall not be construed against any one party. This Amended Agreement has been duly and validly authorized by all necessary corporate action on the part of the Company and has been duly executed and delivered by the Company and constitutes a legal, valid and binding agreement of the Company, enforceable in accordance with its terms.

**THE ADDITIONAL TERMS AND CONDITIONS ATTACHED TO THIS AMENDED AGREEMENT ARE HEREBY MADE PART OF THIS AMENDED AGREEMENT AS THOUGH FULLY SET FORTH HEREIN.**



Initial
_____ Here



Herbst Gaming, Inc.
March 1, 2009
Page 7 of 14

     If you agree to the terms and conditions set forth above, please indicate your acceptance and approval by signing this letter in the space provided below and on the duplicate copy attached. Please return one fully executed original to the undersigned for our files.

     XRoads looks forward to serving you in this important matter.

Very truly yours,

**XRoads Solutions Group, LLC**

Jeffrey R. Truitt
Principal

**AGREED AND ACCEPTED**:

**Herbst Gaming, Inc.**

By:_____      Date:_____
    Mary Beth Higgins
    Chief Financial Officer



Herbst Gaming, Inc.
March 1, 2009
Page 8 of 14

## ADDITIONAL TERMS AND CONDITIONS

**Amounts Not Paid**. All amounts not paid when due will bear interest at an annual rate of 12% or the maximum rate allowed by law, whichever is less.

**Agreement Not to Employ**. XRoads' business is in part centered on its ability to identify and secure the services of talented personnel for its client companies. Absent an agreement with XRoads providing it fair compensation, XRoads would suffer serious economic harm were its client companies to hire directly or through other companies XRoads' employees. Company, agrees that during the term of this Amended Agreement and for twelve months thereafter it shall not, directly or indirectly, knowingly solicit, offer employment to or hire any employee of XRoads with whom Company has had contact as a result of this Engagement. If Company and XRoads agree that Company may hire a XRoads' employee or independent contractor, notwithstanding the prohibition in the immediately preceding sentence, and such hiring occurs within twelve months after the termination of this Amended Agreement, Company shall pay XRoads an amount equal to the particular individual's standard hourly rate at XRoads multiplied by an assumed annual billing of 2,000 hours as liquidated damages. Any such payment shall be made on the date the XRoads' employee or independent contractor begins work for Company. This paragraph shall not preclude Company from making general employment solicitations not specifically aimed at XRoads' employees.

**Warranties and Indemnification**. XRoads neither expresses nor implies any warranties of its work nor predicts results of the Engagement. XRoads has not offered any assurances that the efforts to resolve the financial, structural or management issues facing the Company can or will be successful.

XRoads shall not be subject to any liability to the Company for any act or omission relating to, in connection with or arising out of services rendered hereunder, unless XRoads' acts or omissions constitute willful malfeasance, gross negligence or the reckless disregard of XRoads' obligations or duties hereunder. In furtherance of the foregoing, the Company agrees and covenants that it will not initiate any legal or administrative proceedings whatsoever against XRoads relating to, in connection with or arising from the services rendered hereunder seeking more than the amount of the fees actually paid to XRoads for the Engagement. The Company acknowledges and agrees that the allocation of risk provided by this paragraph is fair and reasonable.

The Company releases, indemnifies and holds XRoads harmless from and against any losses, claims, damages or liabilities ("Losses") to which XRoads may become subject and shall promptly reimburse XRoads for any legal or other expenses (including the cost of any investigations and the hiring of any accountant or other experts) reasonably incurred by XRoads relating to, in connection with or arising from the services rendered hereunder, whether or not resulting in any liability, unless such Losses resulted from XRoads' willful malfeasance, gross negligence or the reckless disregard of its obligations or duties hereunder.

**Legal Proceedings**. If after the termination of the Engagement XRoads is requested and agrees or is required to participate in any manner in legal or administrative proceedings regarding the Company, compensation shall be paid to XRoads for time spent in preparation,



Initial

Here

Herbst Gaming, Inc.
March 1, 2009
Page 9 of 14



travel, attendance at and work related thereto, all at XRoads' then current hourly rates for the relevant personnel involved, unless XRoads is a party litigant. XRoads shall be further entitled to such compensation in the event XRoads is required to participate in any manner in legal or administrative proceedings concerning the Company during the Engagement, if such participation requires work outside the scope of services to be performed under this Engagement. For individuals no longer employed by XRoads, at the time of such participation, payment shall be made to such individuals directly or to their employers, as applicable.

**Accuracy of Information**. The Company will use reasonable efforts to assure that all information, financial or otherwise, provided by or on behalf of the Company with respect to the Engagement (the "Information") to XRoads will, as of its respective dates, be accurate and complete in all its material respects. The Company understands that XRoads will not be responsible for independently verifying the accuracy of the Information. The Company assumes full responsibility for inaccuracies in any Information provided by or on behalf of the Company to XRoads or any third party. The Company will reasonably cooperate with XRoads in all phases of XRoads' services under the Engagement. Specifically, without limiting the generality of the foregoing, if at any time during the Engagement, the Company discovers that any of the Information is inaccurate in any material respect it will immediately notify XRoads.

**Work Output**. XRoads' work processes used, prepared or assembled by XRoads during the Engagement, including XRoads' proprietary methodology, know-how and computer models ("Work Processes") shall be the exclusive property of XRoads. The Company shall be entitled to use any output, end product, reports, memoranda, spreadsheets, etc. (collectively, "Work Product") generated in connection with the Engagement and resulting from the Work Processes for its own exclusive internal use; provided, however, the confidentiality provisions applicable to Work Processes under this Amended Agreement shall also apply to Work Product. XRoads shall retain copies of the Work Processes pursuant to its document retention policy as in effect from time to time. Upon the conclusion of the Engagement, XRoads shall deliver to the Company any data, reports, or runs assembled or prepared by XRoads for the Engagement specifically and for the benefit of the Company. The data, reports and runs shall be the property of the Company.

**Future Engagements**. XRoads has offices throughout the United States. XRoads is or expects to be engaged by other clients from time to time and cannot assure that, following the Engagement, an engagement will not be accepted elsewhere for an interested party.

**Independent Contractor**. The Company acknowledges that XRoads is being retained as an independent contractor to the Company and no employment relationship, partnership, joint venture or other association shall be deemed created by this Amended Agreement.

**Confidentiality**. During the term of the Engagement and for a period of twelve (12) months thereafter, XRoads shall keep secret and retain in strictest confidence, any and all confidential information relating to the Company or which XRoads shall obtain knowledge of by reason of the Engagement, including, without limitation, trade secrets, customer lists, financial plans or projections, pricing policies, marketing plans or strategies, business acquisition or divestiture plans, new personnel acquisition plans, technical processes and other research projects. Notwithstanding the preceding, XRoads shall keep secret and retain in

Initial
Here



**X Roads**
SOLUTIONS GROUP

strictest confidence the Company's slot route customer contracts for the term of such contracts plus one day thereafter. XRoads shall not, except in connection with the performance of its duties hereunder, disclose any such information to anyone outside the Company, other than to XRoads' legal counsel, as required by applicable law (provided prior written notice thereof is given by XRoads to the Company) or with the Company's prior written consent, which shall not be unreasonably withheld or delayed. The obligations of XRoads in this paragraph shall not apply to information which is (i) known generally to the public; (ii) known to XRoads prior to the date of this Amended Agreement; (iii) lawfully disclosed to XRoads by a third party; (iv) generally known in the industry in which the Company is engaged; or (v) required by law to be disclosed by XRoads, in which event XRoads shall provide the Company with prompt notice thereof.

The Company shall not, except as required in the conduct of its business, disclose any Work Processes to any third party other than the Company's lenders, attorneys and advisors or as otherwise required by law, without the prior written consent of XRoads, which consent shall not be unreasonably withheld or delayed.

**Attorneys' Fees.** If any party hereto shall commence any action or other proceeding against the other arising out of, or relating to, this Amended Agreement, the prevailing party shall be entitled to recover from the losing party, in addition to any other relief, its reasonable attorneys' fees irrespective of whether or not the action or proceeding is prosecuted to judgment.

### Agreement to Mediate/Arbitrate:

**a.      Mediation.** The parties shall mediate all disputes and claims between them arising out of or related to the Engagement or any resulting transaction (a "Dispute") before resorting to arbitration. Selection of a mediator shall occur within ten days of a demand for mediation. If the parties cannot agree on the selection of a mediator within ten days, either or both party shall request the JAMS mediators and arbitrators to appoint one for them within fifteen days. The mediation shall take place within ten days of the date of the selection or appointment of the mediator and shall take place in Las Vegas, Nevada. Mediation fees, if any, shall be divided equally among the parties involved and prepaid. If any party commences an arbitration based on a Dispute without first attempting to resolve the matter through mediation or initiates an unauthorized court action, then that party shall be required to pay the other party's attorneys' fees, expert costs and other expenses in connection with the arbitration or unauthorized court action. The parties agree that any Dispute which is not settled through mediation shall be decided by neutral, binding arbitration and not by court action, except as provided by law for judicial review and enforcement of arbitration proceedings and awards and as provided in subsection c. below.

**b.      Arbitration.** The arbitration shall be conducted in accordance with JAMS Expedited Procedures for arbitration (unless the parties agree in writing to use JAMS Commercial Arbitration Rules) and shall be conducted in Las Vegas, Nevada. The parties have no right to discovery and the arbitrator(s) shall have no power to allow discovery unless the parties agree in writing to modify this limitation. Except as provided above, each party shall be responsible for its own attorneys' fees and costs. The arbitrator shall apply Nevada law as the

_____ Initial
_____ Here

Herbst Gaming, Inc.
March 1, 2009
Page 11 of 14



applicable state law governing the Dispute, without reference to choice of law principles, applying Nevada rules of evidence as applicable in a court of law. The award of the arbitrator shall be final and binding upon the parties without right of appeal or judicial review. Application may be had by any party to any court of general jurisdiction for entry and enforcement of judgment based on said award. Such judgment shall be binding, final and non-appealable.

     **c.**     **Provisional Remedies**. Notwithstanding the above, either party may, without waiving any remedy under this Amended Agreement, seek from any court having jurisdiction, any interim or provisional relief available under applicable law that is necessary to protect the rights, property or remedies of that party, pending the outcome of the mediation and/or arbitration, including but not limited to, applications for injunctive relief, writs of attachment or possession.

     **Use of Name**. XRoads shall not have the right to use the Company's name and logo in a description of the services provided by XRoads under the Amended Agreement without the express consent of the Company's Chief Financial Officer or General Counsel.

     **Applicable Law; Headings**. The Amended Agreement shall be governed in accordance with the laws of the State of Nevada, without giving effect to the principles of conflicts of laws. The paragraph headings in the Amended Agreement and the Additional Terms and Conditions are for informational purposes only.

END OF DOCUMENT



Initial
Here

Herbst Gaming, Inc.
March 1, 2009
Page 12 of 14



EXHIBIT A

DISCLOSURES

- American International Group, Inc. ("AIG") was previously a member of a note holder group of an unrelated entity to which XRoads was the Responsible Officer. AIG was also previously an adverse and a non-adverse party to XRoads' clients in unrelated matters.

- Bally Gaming is currently a non-adverse party to a XRoads' client in an unrelated matter.

- Bank of America ("BofA") is currently an adverse party to a XRoads client in an unrelated matter. BofA has previously retained XRoads in unrelated matters. BofA has also previously been an adverse and a non-adverse party to XRoads' clients in unrelated matters.

- Berry-Hinckley Industries is currently a XRoads client on unrelated matters.

- CIT Group ("CIT") is currently an adverse party to a XRoads client in an unrelated matter. CIT has previously been a non-adverse and an adverse party to XRoads' clients in unrelated matters. Also, CIT Retail Finance Group was previously a XRoads' client on an unrelated matter.

- Comerica was formerly XRoads principal banker and lender. Comerica has previously been an adverse party and a non-adverse party to XRoads' clients in other unrelated matters. Comerica was previously part of a bank group that XRoads advised in an unrelated matter.

- Deutsche Bank ("Deutsche") is currently an adverse party to a XRoads client in an unrelated matter. Deutsche has previously retained XRoads in an unrelated matter. Also, Deutsche previously was an adverse and non-adverse party to XRoads' clients in unrelated matters.

- GE Capital Corporation ("GECC") is currently an adverse party to a XRoads client in an unrelated matter and was previously a XRoads client in an unrelated matter and a non-adverse party to XRoads' clients in other unrelated matters. GECC was previously a non-adverse and an adverse party to XRoads' clients in other unrelated matters.

- Gibson Dunn & Crutcher LLP ("GD&C") previously hired XRoads to provide litigation support for a GD&C client in an unrelated matter. GD&C has previously represented XRoads in an unrelated matter.

- Goldman Sachs & Co. ("Goldman Sachs") is currently an adverse party to a XRoads client in an unrelated matter. Goldman Sachs was previously a non-adverse and an adverse party to XRoads' clients in other unrelated matters.

- Gordon & Silver, LTD previously represented non-adverse parties to XRoads' clients in unrelated matters and currently serves common clients with XRoads in unrelated

Initial
_____ Here



**X Roads**
SOLUTIONS GROUP

matters. Gordon & Silver, Ltd. has also previously served as counsel to an employee of XRoads in connection with a civil litigation matter unrelated to XRoads.

- Houlihan Lokey Howard & Zukin ("Houlihan Lokey") is currently an adverse party to a XRoads client in an unrelated matter and has previously been an adverse and a non-adverse party to XRoads' clients unrelated matters.

- International Game Technologies (IGT) is currently a non-adverse party to a XRoads' client in unrelated matters. In addition, a representative of IGT serves as the chairperson of an Official Committee of Unsecured Creditors for whom XRoads serves as financial advisor. Lastly, IGT is an adverse party of a XRoads client in an unrelated matter.

- Latham and Watkins ("Latham") previously represented XRoads in an unrelated matter. In addition, Latham has previously represented XRoads' clients in unrelated engagements, has previously represented parties adverse to XRoads' clients in other unrelated matters, and was previously a client of XRoads in an unrelated matter.

- Lehman Brothers Inc. ("Lehman") is currently an adverse party to a XRoads client in an unrelated matter and has previously been an adverse and a non-adverse party to XRoads' clients in unrelated matters. Lehman has acted as an investment banker to a XRoads client in an unrelated XRoads' engagement.

- Merrill Lynch & Co., Inc. is currently an adverse and a non-adverse party to XRoads' clients and was previously an adverse and a non-adverse party to XRoads' clients in other unrelated matters.

- Nomura Securities is currently an adverse party to a XRoads client in an unrelated matter.

- The Blackstone Group currently is a non-adverse party to a XRoads client in an unrelated matter and previously represented adverse parties to XRoads' clients in other unrelated matters.

- Wachovia Bank, successor by merger to First Union National Bank ("First Union"), is currently an adverse party to XRoads' clients in unrelated matters and has previously been a non-adverse and an adverse party to XRoads' clients in other unrelated matters. First Union was previously a client of XRoads, as a member of a bank group, in an unrelated matter.

- Wells Fargo is currently an adverse and a non-adverse party to XRoads' clients in unrelated matters and was previously an adverse and a non-adverse party to XRoads' clients in other unrelated matters. In addition, Wells Fargo has been both an agent bank and a member of bank groups that XRoads advised in previous unrelated matters.

- Wilmington Trust Company ("WTC") is currently an adverse party to a XRoads client in an unrelated matter. XRoads has previously worked on an engagement where WTC was part of the bondholders committee that XRoads advised in an unrelated matter.



Initial
Here



Herbst Gaming, Inc.
March 1, 2009
Page 14 of 14

- WMS Gaming is currently a non-adverse party to a XRoads' client in an unrelated matter.



Initial
Here