LAW OFFICES OF AMY N. TIRRE,
A Professional Corporation
AMY N. TIRRE, ESQ. #6523
3715 Lakeside Drive, Suite A
Reno, NV 89509
(775) 828-0909 Telephone
(775) 828-0914 Facsimile
E-mail: amy@amytirrelaw.com

BROWN, WINICK, GRAVES, GROSS,
BASKERVILLE AND SCHOENEBAUM, P.L.C.
Douglas E. Gross, AT0003056
Rachel T. Rowley, AT0009517
Brad R. Kruse, AT0004483
666 Grand Avenue, Suite 200
Des Moines, IA 50309-2510

E-Filed: September 21, 2009

Attorneys for Clarke County Development Corporation

## UNITED STATES BANKRUPTCY COURT
## DISTRICT OF NEVADA

| In Re:<br>ZANTE, INC.,<br><br>☐ Affects this Debtor.<br>☐ Affects all Debtors.<br>☐ Affects THE SANDS REGENT<br>☐ Affects PLANTATION INVESTMENTS, INC.<br>☐ Affects LAST CHANCE, INC.<br>☐ Affects DAYTON GAMING, INC.<br>☐ Affects CALIFORNIA PROSPECTORS, LTD.<br>☐ Affects HERBST GAMING, INC.<br>☐ Affects FLAMINGO PARADISE GAMING LLC<br>☐ Affects E-T-T, INC.<br>☐ Affects MARKET GAMING, INC.<br>☐ Affects THE PRIMADONNA COMPANY LLC<br>☐ Affects HGI LAKESIDE, INC.<br>☐ Affects HGI ST. JO, INC.<br>☐ Affects HGI MARK TWAIN, INC.<br>☐ Affects CARDIVAN COMPANY<br>☐ Affects CORRAL COIN, INC.<br>☐ Affects CORRAL COUNTRY COIN, INC.<br>☐ Affects E-T-T ENTERPRISES, LLC | Case No. 09-50746-GWZ<br><br>**Jointly Administered**<br>**BK 09-50747 through BK 09-50763**<br><br>**Chapter 11 Case**<br><br>**DECLARATION OF HELEN K. KIMES IN SUPPORT OF CLARKE COUNTY DEVELOPMENT CORPORATION'S OBJECTION TO CONFIRMATION OF DEBTORS' FIRST AMENDED JOINT CHAPTER 11 PLAN OF REORGANIZATION**<br><br>Hearing Date: October 28 and 29, 2009<br>Hearing Time: 10:00 a.m. |
|---|---|

-1-

I, Helen K. Kimes, hereby declare as follows:

1. I am the president of Clarke County Development Corporation and I make this declaration in support of *Clarke County Development Corporation's Objection to Confirmation of Debtors' First Amended Joint Chapter 11 Plan of Reorganization*. This declaration is based upon personal knowledge and if called upon as a witness to testify as to matters stated herein, I would be competent and willing to do so.

2. Clarke County Development Corporation (hereafter "CCDC") entered into a Management and Operation Agreement (the "Management Agreement") with Southern Iowa Gaming ("SIG") on July 15, 2007. A copy of the Management Agreement is attached hereto as **Exhibit A**. The Management Agreement relates to the joint license application process required under Iowa law for the operation of gambling games on excursion boats. *See* Iowa Code, Chapter 99F, attached hereto as **Exhibit B.** Iowa Code requires CCDC to maintain its license as a sponsoring organization and allows CCDC to enter into a management agreement with an operator to operate the gambling facility. *Id.* The operator must also maintain a license. *Id.*

3. The Management Agreement was amended on July 15, 2007 (the "Amendment"). *See* **Exhibit A**. The Amendment required SIG to pay CCDC a sum equal to 1.5% of the previous month's adjusted gross gaming revenue. *See Id.*

4. On or about September 30, 2004, SIG assigned the Management Agreement to Herbst Gaming, Inc. ("HGI" or the "Debtor"), pursuant to the Agreement attached hereto as **Exhibit C**. SIG had to obtain the consent of CCDC under the express terms of the Management Agreement, which required CCDC's consent before assignment. In addition, CCDC's consent had to be obtained because under Iowa law, in order for an operator to obtain a license, it must have the cooperation and support of the non-profit entity, in this case, CCDC. *See* Iowa Code, Chapter 99F, attached hereto as **Exhibit B**; The Joint License Application, attached hereto as **Exhibit D**.

5. On or about September 30, 2004, CCDC provided its consent to the assignment and the Iowa Racing and Gaming Commission ("IRGC") thereafter approved the assignment to HGI.

6. Upon receipt of HGI's Petition for Bankruptcy, I realized that the Debtor had not listed the Management Agreement as an executory contract, even though both parties have continuing obligations under the Agreement. On or about April 28, 2009, my counsel contacted Debtor's counsel and requested that the Management Agreement be listed on Debtor's Schedule G. Debtor's counsel subsequently amended its Schedule G to include the Management Agreement. *See* Schedule G, attached as **Exhibit E**.

7. On or about July 22, 2009, Debtor filed its First Amended Joint Plan for Reorganization (the "Plan"). Pursuant to Sections 7.1 and 7.2 of the Plan, the Debtor proposes to unilaterally assume the Management Agreement and assign it to Reorganized Herbst (the "Assignee"). I was surprised by this, given that the Debtor never sought or even discussed obtaining CCDC's consent to the assignment of the Management Agreement. Moreover, I was surprised to learn that the Debtor sought to unilaterally assume and assign the Management Agreement, because in order to obtain an operator's license from the IRGC, the Reorganized Debtor must file an application with the IRGC, which requires the support and consent of CCDC. *See* **Exhibit D**.

8. Once we learned that the Debtor proposed to unilaterally assume and assign the Management Agreement, we contacted Debtor's counsel and notified him that CCDC did not consent to the assumption and assignment of the Management Agreement, as there are a number of new risks and uncertainty involved with such an assumption or assignment that were never factored into the terms of the Management Agreement.

9. Debtor's counsel did not agree with CCDC's position; instead indicating that because the identity of the operator of the gambling structure is not material, consent from CCDC

-3-

is not required. However, such an interpretation would in effect render the entire statutory scheme of Iowa Code Chapter 99F ineffectual as a regulatory device. As a result, CCDC decided it was necessary to file an objection to the confirmation of Debtor's First Amended Chapter 11 Joint Plan for Reorganization.

10. I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct and that this Declaration was executed on September 21, 2009, at Osceola, Iowa.

_____
Helen K. Kimes, President CCDC