**EXHIBIT "A"**

**EXHIBIT "A"**

## MANAGEMENT AND OPERATION AGREEMENT

This Agreement is entered into this 15Th day of July, 1997, by and between SOUTHERN IOWA GAMING CO., a Iowa corporation (hereinafter called "Southern Iowa") and CLARKE COUNTY DEVELOPMENT CORPORATION, an Iowa non-profit corporation (hereinafter called "Development").

### I. PREMISES

1. Iowa Code Chapter 99F (the "Act") authorizes the operation of gambling games on excursion boats operating in the State of Iowa. The Act provides that a license for operating gambling games may be granted to a non-profit entity that is a "qualified sponsoring organization". The Act also provides that a license to operate the excursion boat, on which the gambling games will be conducted, may be granted to any partnership or corporation. Furthermore, the Act authorizes a qualified sponsoring organization, that is licensed to operate gambling games, to enter into a management and operation agreement with a person who is an excursion boat licensee, for the operation of the gambling games.

2. DEVELOPMENT is a qualified sponsoring organization. SOUTHERN IOWA is a corporation that intends to obtain a license under the Act for the operation of the excursion boat on which the gambling games will be operated (hereinafter the "Riverboat"). DEVELOPMENT and SOUTHERN IOWA desire to cooperate in a joint license application to pursue these activities.

3. DEVELOPMENT and SOUTHERN IOWA desire to establish this Operation and Management Agreement, whereby DEVELOPMENT will authorize SOUTHERN IOWA as its sole and exclusive operator and manager of the gambling games that DEVELOPMENT is licensed to operate during the term of this Agreement (hereinafter "Gambling Games") (unless terminated as hereinafter provided or upon the non-approval of SOUTHERN IOWA by the Iowa Racing and Gaming Commission). The operation of such Gambling Games will be conducted exclusively on the Riverboat to be operated by SOUTHERN IOWA.

1

EXHIBIT A

## II. AGREEMENT

NOW THEREFORE, in consideration of the mutual agreements herein contained DEVELOPMENT and SOUTHERN IOWA agree:

1. <u>Appointment of Operator and Manager.</u>

    A. Subject to the terms and conditions of this Agreement, DEVELOPMENT hereby selects and appoints SOUTHERN IOWA as its exclusive operator for the purpose of conducting Gambling Games on the Riverboat to be operated by SOUTHERN IOWA during the term of this Agreement unless terminated as hereinafter provided or non-approval of SOUTHERN IOWA by the Iowa Racing and Gaming Commission. DEVELOPMENT also agrees to act as the "Qualified Sponsoring Organization," as that term is used in Iowa Code Chapter 99F, in connection with the license application(s) of DEVELOPMENT and SOUTHERN IOWA to the Iowa Racing and Gaming Commission. The appointment of SOUTHERN IOWA as exclusive operating and management agent is subject to the condition subsequent that at no time during the term of this Agreement shall SOUTHERN IOWA cause such license (or any renewal or replacement license) to be suspended, revoked or terminated for a period in excess of one hundred twenty (120) days.

    B. Subject to the terms and conditions of this Agreement, SOUTHERN IOWA hereby accepts the responsibility of operating and managing Gambling Games for DEVELOPMENT, to the extent that such Gambling Games are hereafter authorized by the Iowa Racing and Gaming Commission and in accordance with the provisions of Iowa Code Chapter 99F.

    C. The term of this Agreement shall be five (5) years. SOUTHERN IOWA shall also have nine (9) exclusive Options to Extend this Agreement for additional five (5) year terms from the expiration of the then current term.

2. <u>License Applications.</u>

    A. DEVELOPMENT and SOUTHERN IOWA agree to cooperate fully and quickly in the preparation and filing of all documentation required by the Iowa Racing and Gaming Commission. DEVELOPMENT and SOUTHERN IOWA will seek approval for a license to conduct the Gambling Games and the Riverboat under Iowa Code Chapter 99F, in conformance with the rules and regulations of the Iowa Racing and Gaming Commission.

    B. Both DEVELOPMENT and SOUTHERN IOWA acknowledge that an important part of the license application procedure is the completion of background investigations by the Iowa Division of Criminal Investigations. Such investigations will require disclosure by all officers, directors, agents and principal equity

holders (hereinafter collectively referred to as "Insiders") of both DEVELOPMENT and SOUTHERN IOWA. Both DEVELOPMENT and SOUTHERN IOWA agree to compile such information from their respective Insiders immediately. In the event that such information reveals that an Insider exists who would not meet the requirements of the Division of Criminal Investigation, or the Iowa Racing and Gaming Commission, or the requirements of Chapter 99F, such individual shall be terminated (if he or she is an employee), or removed (if he or she is a director), or their interest in SOUTHERN IOWA eliminated (if he or she is a partner or stockholder in SOUTHERN IOWA). The preceding sentence shall apply throughout the term of this Agreement.

C.  DEVELOPMENT agrees throughout the term of the Agreement to undertake all actions necessary to: (i) continue its corporate status, in good standing, as an Iowa non-profit corporation; (ii) obtain and continue its status as an exempt non-profit entity under Section 501 of the Internal Revenue Code; and (iii) continue its status as a qualified sponsoring organization under Iowa Code Chapter 99F.

3.  Costs of License Applications: Money Advance for DEVELOPMENT.

The full costs of all license applications, including application fees and other fees charged by the Iowa Racing and Gaming Commission shall be paid by SOUTHERN IOWA.

4.  Services to Be Performed by Agent.

A.  DEVELOPMENT hereby appoints SOUTHERN IOWA as its sole and exclusive agent, and SOUTHERN IOWA agrees as such agent, to perform the following services for DEVELOPMENT:

(i)  To assist DEVELOPMENT in retaining its license to operate the Gambling Games and to assist DEVELOPMENT in meeting all requirements for the satisfaction of all legal and fiscal requirements for the maintenance and continuation of such license.

(ii)  To provide all personnel, equipment and services necessary for the operation of the Gambling Games, including but not limited to: croupiers, cashiers and other Gambling Games employees, training, janitorial, garbage removal, security, insurance, legal and accounting services, advertising, program printing and distribution, and other related operational services. SOUTHERN IOWA shall have exclusive control over the management affairs in the operation of the Gambling Games.

(iii)  To generally perform all management functions and to make all management decisions necessary or appropriate for the operation of the Gambling Games. SOUTHERN IOWA agrees to prepare any and all reports to the Iowa Racing and Gaming Commission as may be required by the rules and regulations of said Commission and the Act. All books and records of the Gambling Games shall be

3

available for inspection during normal business hours. SOUTHERN IOWA shall cooperate with DEVELOPMENT and its accountants in providing operational information that is required by the Iowa Racing and Gaming Commission.

(iv) SOUTHERN IOWA shall indemnify and hold DEVELOPMENT, its directors and officers harmless from any and all liability arising from the performance by SOUTHERN IOWA of the above-described services.

B. All costs, expenses, fees, salaries and compensation advanced or incurred by SOUTHERN IOWA under this Section 4 shall be paid by SOUTHERN IOWA at its sole cost.

5. Proceeds from Boat Operations, Gambling Games and Admissions.

A. Proceeds. All proceeds received by SOUTHERN IOWA from the operation of the Riverboat (gambling or non-gambling) shall be the sole and exclusive property of SOUTHERN IOWA, subject to the terms of this Agreement and Chapter 99F of the Iowa Code. Such proceeds include, but are not limited to, gambling income, passenger fares, food and beverage sales, entertainment, souvenir and gift sales, and beauty and other personal services.

B. Admission Fee. On a monthly basis and not later than the 15th of each succeeding month, SOUTHERN IOWA shall pay DEVELOPMENT the sum of fifty cents ($.50) for each Patron admitted on the excursion gambling boat ("Admission Fee"). "Patron" shall not include employees, non-gaming visitors of SOUTHERN IOWA or vendors.

6. Default: Arbitration: Verification.

A. Default Defined. In the event that one Party to this Agreement believes that the other Party is in default hereunder, the non-defaulting Party shall send written notice of such alleged default to the allegedly defaulting Party. During the thirty (30) day period following receipt of such notification, the allegedly defaulting Party shall have the right to cure any alleged default.

B. Rights of DEVELOPMENT. In the event SOUTHERN IOWA is in default, and such default is not cured within thirty (30) days after receipt of written notice of default, then DEVELOPMENT shall have the option to terminate this Agreement, by notifying SOUTHERN IOWA of such termination in writing.

C. Rights of Operator. In the event that DEVELOPMENT is in default, and such default is not cured within thirty (30) days after receipt of written notice thereof, then SOUTHERN IOWA shall have the option to terminate this Agreement by notifying DEVELOPMENT of such termination in writing.

4

D. <u>Verification.</u> Each of the Parties to this Agreement shall have the right to verify performance by the other Party. To facilitate such verification, each Party agrees to allow representatives of the other Party reasonable access to each Party's books and records of the Riverboat and on-shore related facilities and activities, including but not limited to Gambling Games, and the Gambling Games facilities. SOUTHERN IOWA shall furnish to DEVELOPMENT copies of all reports and documents filed by SOUTHERN IOWA with the Iowa Racing and Gaming Commission, and shall furnish to DEVELOPMENT annual audited statements.

7. <u>Insurance and Indemnification.</u>

A. <u>Indemnification.</u> SOUTHERN IOWA shall indemnify and hold DEVELOPMENT, and its directors and officers, harmless against and from any liability and/or claims for loss or damage to property, or for the injury to or death of any person arising out of SOUTHERN IOWA's operation of the Gambling Games, the Riverboat, the docking facilities or on-shore facilities and activities.

B. <u>Insurance.</u> Beginning on the date that SOUTHERN IOWA receives possession of the completed Riverboat, SOUTHERN IOWA shall maintain a policy or policies of liability insurance covering the Riverboat and any docking facilities and on-shore facilities owned or leased by SOUTHERN IOWA, providing personal injury, death and property damage liability coverage not less than Five Million Dollars ($5,000,000). SOUTHERN IOWA shall also maintain workers compensation insurance as required by law. Such policies of insurance shall name DEVELOPMENT as an additional or co-insured Party.

8. <u>Support of DEVELOPMENT.</u> Further, DEVELOPMENT agrees to use its best efforts to assist SOUTHERN IOWA in obtaining necessary licensing and permits for liquor, food, signage, amusements and similar permitted activities.

9. <u>No Partnership.</u> The Parties hereunder are acting as independent contractors and this Agreement shall not be construed to create any partnership or joint venture. SOUTHERN IOWA is acting in the limited capacity set forth herein and no Party hereto shall have the authority to bind the other or create any liability on behalf of the other. No provision hereof shall be construed to confer any rights or benefits on any other persons than the Parties hereto.

10. <u>Approval of Iowa Racing and Gaming Commission - Compliance with Iowa Law.</u> This Operation and Management Agreement, and any future amendments to this Agreement, shall be binding obligation of both SOUTHERN IOWA and DEVELOPMENT until such time as this Agreement, or future amendments, if any, and license renewal applications of DEVELOPMENT, are rejected by the Iowa Racing and Gaming Commission. The Parties agree to cooperate in the submission of this Agreement and any future amendments to the Iowa Racing and Gaming Commission. Both DEVELOPMENT and SOUTHERN IOWA jointly accept responsibility for compliance

5

with the laws of Iowa and the rules of the Iowa Racing and Gaming Commission. If the application for licensure is rejected due to unsuitability of DEVELOPMENT or an officer or director of DEVELOPMENT, then this Agreement shall be null and void if the issue of suitability is not resolved to the satisfaction of the IRGC within thirty (30) days.

11. <u>Ownership of Gambling Games Equipment.</u> All Gambling Games equipment and supplies shall be the property of SOUTHERN IOWA. Nothing in this Agreement shall be construed to grant DEVELOPMENT any interest in the personal or real property owned by SOUTHERN IOWA, including, without limitation, (i) the Riverboat and the fixtures and personal property attached to or located on the Riverboat: (ii) the docking facilities, landings and real property.

12. <u>Assignment to Limited Partnership.</u> DEVELOPMENT acknowledges that SOUTHERN IOWA may elect to assign its rights and delegate its duties under this Agreement to an Iowa corporation which is controlled by SOUTHERN IOWA or to a Limited Partnership in which an SOUTHERN IOWA controlled corporation will be the general partner.

## III. MISCELLANEOUS

1. <u>Governing Law.</u> This Agreement shall be construed and interpreted, and the rights of the Parties shall be determined, in accordance with the laws of the State of Iowa. The Parties agree and acknowledge that all terms and provisions hereof are subject to applicable law, including the statutes of the State of Iowa with respect to gaming and any rules and regulations promulgated by the Commission.

2. <u>Event of Force Majeure.</u> Any Party whose performance under this Agreement is prevented by an Event of Force Majeure shall give prompt notice of the Event of Force Majeure to the other Party and shall thereafter use its best efforts to minimize the duration and consequences of, and to eliminate, any such Event of Force Majeure. No Party shall have any liability to the other Party for a breach of this Agreement resulting from an Event of Force Majeure.

3. <u>Headings.</u> The table of contents and the headings of the several sections herein are inserted for convenience of reference only and are not intended to be a part of or to affect the meaning or interpretation of this Agreement.

4. <u>Entire Agreement, Amendments and Waivers.</u> This Agreement, together with all exhibits hereto, constitutes the entire Agreement among the Parties pertaining to the subject matter hereof and supersedes all prior and contemporaneous Agreements, understandings, negotiations and discussions, whether oral or written, of the Parties. There are no other Agreements among the Parties in connection with the subject matter hereof except as specifically set forth herein or contemplated hereby. Any supplement, modification or waiver of this Agreement shall be in writing and agreed to by all Partners. No waiver of any of the provisions of this Agreement shall be deemed or shall constitute

a waiver of any other provision hereof (whether or not similar) nor shall such waiver constitute a continuing waiver unless otherwise expressly provided.

5. <u>Remedies.</u> The Parties hereto acknowledge that the rights granted hereunder are unique and that irreparable damage would result if this Agreement is not specifically enforced and that, therefore, the rights and obligations of the Parties under this Agreement may be enforced by a decree of specific enforcement issued by a court of competent jurisdiction and appropriated equitable relief may be applied for and granted in connection therewith.

6. <u>Estoppel Certificates.</u> Each Party agrees to promptly execute estoppel certificates to the other Party upon request. If:

   A. the requesting Party delivers an estoppel certificate request to the certifying Party in accordance with the notice provisions of this Agreement, and

   B. ten (10) business days have elapsed from the effectiveness of such estoppel certificate request and during such period the certifying Party has failed to execute and deliver to the requesting Party (or its attorneys or the third Party(ies) designated by such requesting Party) the estoppel certificate counterpart(s) provided by the requesting Party, setting forth with reasonable specificity any alleged exceptions to the statements required to be contained in such estoppel certificate, then the certifying Party shall be deemed for all purposes, whether or not this lease has been terminated or is otherwise in full force and effect, to have executed and delivered to the third Party and the requesting Party an estoppel notice, dated as of the effective date of the estoppel certificate request, in the form submitted by the requesting Party to the certifying Party.

7. <u>Counterparts.</u> This Agreement may be executed in one or more counterparts, each of which shall be deemed an original, but all of which together shall constitute one and the same instrument.

8. <u>Notices.</u>

   A. All notices required or permitted to be given hereunder shall be given by registered mail, in person (in writing), by telecopy or by telex and addressed as follows:

   <u>To Southern Iowa Gaming Co:</u>
   SOUTHERN IOWA GAMING CO.
   101 Jules Street
   St. Joseph, Missouri 64501

7

To Clarke County Development Corporation:
CLARKE COUNTY DEVELOPMENT CORPORATION
139 North Main
Osceola, Iowa 50213

B.  Any Party may from time to time change its address for the purpose of notices to that Party by a similar notice specifying a new address, but no such change shall be deemed to have been given until it is actually received by the Party sought to be charged with its contents.

C.  All notices and other communications required or permitted under this Agreement which are addressed as provided in this Section if delivered personally or by air courier, shall be effective upon delivery; and, if delivered by mail, shall be effective upon deposit in the United States mail, postage prepaid.

9.  **No Third-Party Beneficiary.** This Agreement is being entered into solely for the benefit of the Parties hereto, and the Parties do not intend that any other person shall be a third-party beneficiary of the representations, warranties, agreements or covenants made by any Party contained in this Agreement.

10. **Severability.** In the event that any one or more of the provisions contained in this Agreement or in any other instrument referred to herein shall, for any reason, be held invalid or unenforceable in any respect, such invalidity or unenforceability shall not affect any other provision of this Agreement or any other such instrument.

11. **Successors and Assigns.** Subject to the restrictions on transfer and assignment herein contained, the terms and provisions of this Agreement shall be binding upon, and inure to the benefit of, the successors, assigns, personal representatives, estates, heirs and legatees of the respective Parties.

IN WITNESS WHEREOF, the Parties have executed this Agreement as of the date first above written.

SOUTHERN IOWA GAMING CO.

By: _____
Its: _____
Date: 7-15-97

CLARKE COUNTY DEVELOPMENT CORPORATION

By: _____
Its: President
Date: 7-15-97

Exhibit #8

# AMENDMENT TO MANAGEMENT AND OPERATION AGREEMENT

THIS Amendment to Management and Operation Agreement entered into this 15th day of July, 1997 by and between SOUTHERN IOWA GAMING CO. (hereinafter called "Southern Iowa") and CLARKE COUNTY DEVELOPMENT CORPORATION, and Iowa Non-Profit Corporation (hereinafter called "Development") as follows:

WHEREAS, the parties have entered into a Management and Operation Agreement, and

WHEREAS, said Agreement requires Southern Iowa to pay $ .50¢ per patron gaining entry to the proposed vessel, and

WHEREAS, the parties believe it is more beneficial to assess a percentage of Adjusted Gross Revenue,

NOW THEREFORE BE IT AGREED:

1. Paragraph 5. B. of the Management and Operation Agreement is hereby deleted and the following inserted in lieu thereof:

   "B. Admission Fee." On a monthly basis and not later than the 15th day of each month, Southern Iowa shall pay Development a sum equal to 1.5% of the previous month's Adjusted Gross Gaming Revenue.

2. Other than as amended by paragraph one hereof, all remaining terms and conditions of the Management and Operation Agreement shall remain the same.

SOUTHERN IOWA GAMING CO.

By: _____
Its: _____
Date: 7-15-97

CLARKE COUNTY DEVELOPMENT CORPORATION

By: _____
Its: President
Date: 7-15-97